Larry A. WATTS, Plaintiff,

v.

Rayfield ALFRED, et al., Defendants.

Civ. A. No. 92–1306 (TPJ).

United States District Court,
District of Columbia.

July 17, 1992.

Lee J. Levine, David L. Perry, Laura B. Farmelo, Ross, Dixon & Masback, Washington, D.C. (Arthur B. Spitzer, Elizabeth Symonds, ACLU, of counsel), for plaintiff.

Benjamin Jay Blustein, Office of Corp. Counsel, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

This case presents an issue as to the freedom of speech of a public employee. Plaintiff, a District of Columbia firefighter, claims to have been punitively reassigned for having criticized a departmental order he regarded as a violation of the First Amendment.

The case is presently before the Court upon plaintiff's application for a preliminary injunction ordering his reinstatement *pendente lite* to his regular duty station, relief to which he is entitled only upon his demonstration that he has a substantial likelihood of succeeding on the merits; that he will suffer irreparable harm if an injunction is *not* granted; that other interested parties will not suffer substantial harm if an injunction *is* granted; and that the public interest will be furthered by the injunction he seeks. *Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205, 1208 (D.C.Cir. 1989).

### I.

On March 7, 1992, plaintiff Larry Watts, a captain in the District of Columbia Fire Department, using the prescribed channel for such communications up the chain of command, transmitted a formal protest to Fire Chief Rayfield Alfred of a "special order" issued five days earlier by Chief Alfred that had prohibited the public display in firehouses of a controversial political cartoon.[1] The protest, although somewhat intemperate in tone, was in essence an expression of Watts' objection to what he perceived as unjustified official censorship. The protest resulted in Captain Watts' summary reassignment on March 31st from his position as Acting Battalion Fire Chief at Engine Company No. 27 to a non-command make-work position in the

Department's Property Section. Watts was also instructed to submit to a psychiatric evaluation by a Police and Fire Clinic psychiatrist and declared ineligible for overtime work. Charges—as yet unresolved—were preferred against him for alleged violations of departmental regulations prohibiting the making of "false or unfounded charges and statements" concerning, and using "insulting language" to, a superior officer.

The District of Columbia defends its reproof of Captain Watts principally with an affidavit of Fire Chief Alfred that portrays the action taken against Watts on March 31st as a contemporaneous reasoned judgment by the Chief himself as to Watts' fitness for line command of a firefighting unit in a department long beset by racial animosities. The District characterizes Watts' protest as an act of "insubordination."

The record presently before the Court, however, belies both assertions. Watts' reassignment and direction to report for psychiatric evaluation were ordered by Assistant Fire Chief Thomas McCaffrey, Jr., the "third endorser" of Watts' formal protest in the chain of command, who also preferred the intra-departmental disciplinary charges against him. Nothing is shown to confirm that Chief Alfred himself has ever officially acted at all on Watts' protest, much less that he personally directed or contemporaneously ratified the action taken against him. There are no facts shown, moreover, other than that he vehemently expressed his displeasure at the "special order," to mark Captain Watts as insubordinate, or otherwise to render him unfit to remain in his regular duty assignment.[2] Watts had, in fact, complied fully with the "special order" that offended him before submitting his protest, and had required his subordinates to do so as well. He made his protest in accordance with the prescribed Departmental procedure, and he

---

1. The cartoon was deemed racially insensitive by Chief Alfred, and likely to exacerbate racial tension within the Department.

   The order prohibiting its display has since been withdrawn.

2. The psychiatric evaluation of April 1st, such as it was, found him fit for duty without restriction. (Aff. of Jack Raher, M.D., July 13, 1992).

neither published nor publicized it elsewhere. He involved no other firefighters in it. And, so far as appears, he has never engaged, or incited or abetted others, in insubordinate conduct of any description.

In short, it is undisputed—indeed, conceded—that Watts, a 26–year veteran of the Department (and without, so far as appears, any pertinent history of misconduct whatsoever) was reassigned solely on the basis of his protest. The Court finds, on the record as it stands, that Captain Watts' summary reassignment was punitive, and was taken in retaliation for his impertinence (and, perhaps, his tone) in protesting the "special order."

## II.

Although it is well-established that the First Amendment rights of public employees are attenuated to the extent it may be necessary to serve a compelling interest of their governmental employer, they are nevertheless not altogether without constitutional protection in expressing themselves. If a public servant speaks out critically of his governmental employer, or to his employer's discomfiture (at least on matters of public as opposed to personal concern), unless he does demonstrable damage to a legitimate government interest the employee is generally as immune to any adverse consequences his vengeful governmental employer might like to visit upon him as is the private citizen who speaks in the same vein. *See Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1986). *See also Fire Fighters Assoc. v. Barry,* 742 F.Supp. 1182 (D.D.C.1990).

The Court finds Captain Watts' protest was clearly on a subject of public concern; indeed, he entitled the subject matter of his protest: "Suppression of the Truth/Suppression of Freedom of Speech," as he perceived the effect of the "special order" to be. The Court acknowledges that the Fire Department may properly regard the maintenance of both intra-departmental racial harmony and organizational discipline as genuinely compelling governmental interests. Nevertheless, neither is sufficiently placed in jeopardy by Captain Watts' protest alone, so far as is shown here, to warrant the penalty he has incurred by making it. The Court therefore concludes that plaintiff Larry Watts is shown by the record to be substantially likely to prevail, when this case is finally determined upon the merits, in establishing his right under the Constitution to have spoken as he did with impunity.

Nor is it much more difficult to find that Captain Watts sustains irreparable injury in his continuing exile to the Property Section. No final decree can ever restore to him the time he has lost at his permanent duty station (nor, for that matter, compensate him for overtime he cannot perform, and thus will never be paid for). The Court concludes that plaintiff has shown himself to be sustaining continuing irreparable injury, and to be without an adequate remedy at law.

The most troublesome issue to be confronted in passing upon plaintiff's request for a preliminary injunction resides in Fire Chief Alfred's expression of his *current* misgivings about Watts as a line firefighter in a command position. While Chief Alfred's declaration is neither credible nor persuasive in its *post hoc* justification of the peremptory treatment Watts received earlier at the hands of Assistant Chief McCaffrey, it gives the Court greater concern to the extent it represents the Chief's present-day reflections on the effect Watts' restoration to his permanent duty station might have on departmental discipline and respect for command authority. It is thus relevant to ascertaining the direction in which the public interest lies, and in striking the equitable balance.

The Court finds, however, upon analysis, that Chief Alfred's professed apprehensions are essentially speculative and hypothetical. They are *not* supported by any concrete information or intelligence suggesting that unrest among the firefighters assigned to Captain Watts' unit is imminent if he is restored to duty there, or that he has lost command credibility. In the absence of any such evidence, the Court

concludes that the more immediate public interest lies in enforcing the Constitutional guarantee of freedom of expression, as opposed to anticipating a possible breakdown in departmental discipline of a magnitude to pose a danger to public safety, which is not shown likely to occur.

Similarly, the balance of hardship seems to favor Captain Watts. In other words, it is more onerous to Captain Watts to keep him indefinitely in penal exile for his expressive audacity than it is to the Department to allow him to resume his duties as an Acting Battalion Chief at Engine Company No. 27.

Accordingly, for the foregoing reasons, it is, this 17th day of July, 1992,

ORDERED, that plaintiff's motion for a preliminary injunction is granted in part; and it is

FURTHER ORDERED, that defendants Rayfield Alfred, Sharon Pratt Kelly, and the District of Columbia, their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, forthwith cause Larry A. Watts to be reassigned to his permanent duty station as Acting Battalion Chief at Engine Company No. 27, and to confer upon him all such powers and duties as he heretofore possessed and exercised in that capacity prior to March 31, 1992; and it is

FURTHER ORDERED, that said defendants forthwith cause Larry A. Watts to be restored to eligibility for overtime duty; and it is

FURTHER ORDERED, that said defendants take no further disciplinary action for his protest of March 7, 1992, against Larry A. Watts without prior leave of court; and it is

FURTHER ORDERED, that this case is set for a status and scheduling conference on at 9:30 a.m. on August 6, 1992.